Call the first case. Case number 10-0994, Mr. Collins v. Retirement Board of the Policemen's Annuity and Benefit Fund, Annuity and Benefit Fund, I'm sorry. Do you want to read it? We can begin with the appellant only and then you can introduce yourself, the appellee. Michael Bowen for the record, the attorney for the appellant, Mr. Collins, who is also the petitioner. And I want to begin by first thanking the court for being here today and considering this matter. It's a very topical matter to set at least. We will say, Mr. Bowen, that the rule is to grant oral arguments, but it's always a pleasure to grant an oral argument when the briefs are well written, and that's the case on both sides. Thank you. Thank you very much. That doesn't mean we don't have questions, because we do, and when you're ready, we'll begin. I ask myself rhetorically the question, why should the court reverse the decision of the court? And the reasons I set forth are set down in the brief, but basically they are that the court affirmed the decision of the board, and our focus must be on the decision of the board. Before you begin there, let's go with a more fundamental question, and that is, how wide are we opening the door for every dispatch aide to claim that they were performing investigative work during that time that they worked as a dispatch aide? So do we want to do that, or is this case turns on the facts? That's a legislative question. Well, no, I... And the reason is that it's part of an argument. So is your position that every dispatch aide qualifies as having done investigative work? No, if they do investigative work. The statute as it is written, 214, there's a subparagraph, A, B, C, and D. C focuses on granting work to, or pension extension to, like A, one group is... We know those who we're only dealing with. But then this group is at the bottom. Right. Investigative, people who do investigative work while employed by the city of Civics. And that's the exception you're seeking to invoke. Yeah, that's the same. Now, Dederick was the same thing. But the statute doesn't define the term that really controls this case, and it doesn't. It doesn't. I agree with you. To whom do we look for guidance on that work? Case 311 and 312. I know where you're headed. But didn't the board in this particular case pretty much mouth that language in its order in this case? No, they ducked Dederick. They ducked it? They wanted to relegate Dederick again in this case. That's part of my argument, too. They didn't like it. So it was read again. And there's no distinction of difference between this and Dederick. Both cases factually involve testimony that is unimpeached, unopposed, uncontradicted, and the appellate court in Dederick said five times. So you don't think that there's a difference between working in a dispatch center and working in a police station itself? I do. So Dederick is different in that regard? No, it's the same. Well, she was working in a dispatch center, not in a police station. Dederick was working in the 20th District. Yeah, okay, in that regard. Right, logistically different. Here's the difference. And factually, let me bring these facts out. According to the Dederick opinion, she would substitute for police officers on vacation in the review office. Is there any similar facts brought out in this case? That fact was a negative to the question. The question that was asked her by the board member was, did you do investigative work? And she said yes, and she spelled it out in particular. But she was asked, I think, whether she ever substituted for a police officer. And she said no. She said no. And then in Dederick as well, she would write confidential reports, submit reports of her conclusions to the department. Did Ms. Collins do any similar work? No, in particular. The term, again, is the word of heart. Investigative work. Vis-a-vis investigator. Now, the way I see it, the posture of the respondent is, you have to be an investigator. No. She's doing the same thing a beat officer does. You think about it for a second. What does a beat officer do? Does he investigate? He gets the same information as the policeman does. What's the beginning of any investigation? It's the information you get on the street of the beat officer. How many offenders? Where are they? Are they armed? Was anybody hurt? Where did they go? What did they look like? That's investigation. That's what a beat officer does, okay? He gives that to a person who the next day comes out there, and he is, quote, the investigator. But the investigative work commences on the street with the initial information of identifying whether there's a corpus collecti and whether or not who is the person who perpetrated the crime. Okay, let's concede that part. I agree with you that she engaged in some of that similar work. The question is, does every dispatch aide, to the extent that they answer these 911 calls, engage in the very same sort of work? They always ask questions of the caller. How many assailants are there? What kind of problem arose if there was a shooting? How many shooters were there? Which way did they run? Those sort of questions always come up, and I'm not sure whether your position is that when those questions are asked, that person is engaging in investigative work and, therefore, qualifies under this exception. I agree, and I think they do. And the reason I say it is that the legislature said it. The legislature chose not to define a narrowly determined investigator. It said investigative work, and so it wanted to be more inclusive. Now, I don't know how many dispatchers there are in this world, but you know the point is the legislature drew it up. And the legislature said, we're including these people. You know, there are civilian investigators assigned to the Corporation Counsel's Office, okay? Maybe they were thinking about that. I don't, but they didn't say. If that's what they wanted to limit it to, the civilian investigators, or assigned to an attorney on city work, maybe they wanted to do that. But they didn't say it. They said people who do investigative work. So they opened that door. Yeah, but the question here is for the duty of the board. Who's the board's duty to? Their fiduciary duty is not to that fund. Uh-uh. It's to the beneficiaries of the fund who are the policemen. That's what Coleman says. That is what your other opinion in Barrett said, okay, in the fireman cases. They are the beneficiary. You go find the money, city. City has to find money. Section 168 of the statute says city is mandatory. Pay the bill. That's not a matter of discretion. And if you don't have the money, in the earlier cases, raise the tax. And people in these hard times are saying to themselves probably, how can they do that? Well, if you don't have police protection, you don't have fire protection, what do you need a government for? You don't need it. All right? It's a fund of nothing. Going back to the statute for a minute. Pardon me? We understand your argument. I'm sorry I interrupted you, but your brief is excellent, and you made the argument that you're just making to us now in your brief. Okay. And I appreciate that. Okay. But let's go back to an examination of the statute again for a minute. All right. The paragraph that you're relying on, of course, that you stress and rely heavily on the word investigative. I have to. I know you do, but there's an interesting little. Is there a wrinkle in that, do you think? There is. The word safety appears in that subsection. Okay. But you never made an argument that really safety carried over to employees of the city. No. Presumably, if you were a dispatcher for the county police. Yeah. You could use the word safety. Yes, you could. But you can't if you're working for the city. Right. I agree with you. It pertains to all preceding paragraphs. And it goes, or investigative work for the city, possibly employees. So presumably, if I were a former dispatcher taking 911 calls, admittedly, that's a job, that's a safety job. You're answering 911 calls for the county police. Okay. It depends. You could tack on your time under the statute if you later became a Chicago police officer. Look at the job description. Okay. Now, that's another thing the board didn't do. The job description of what entailed in being a dispatcher's aide and her petition. What's the difference between a dispatcher and a dispatcher's aide? A dispatcher's aide is a Chicago police officer is a dispatcher. A dispatcher's aide is a civilian. She did the same thing. When the initial call comes in, does the dispatcher's aide take those 911 calls when they first come in? No, she takes the information. She gives that to the dispatcher. The dispatcher sends it to them. When I dial 911, who answers? You got me. Billy Corcoran. Okay. Is it the aide or is it the dispatcher? It can be either. It can be either. Both take information. Okay. But the dispatcher is a police officer, so this section doesn't apply to her or him because that person is already earning pension benefits. Well, the other person, if you remember, is a sworn officer. Right. Okay. Her testimony is, you know, what was the difference between when you were a sworn officer and when you were a dispatcher's aide? Nothing other than we wrote it in longhand when we were a dispatcher's aide and we wrote it into a computer when we were a dispatcher. She did the same job. Function-wise, it was identical. Did she answer the telephone? Yes. All right. So did the dispatcher. I understand that. Yeah. In other words, the duties could be interchangeable at some point. In performance duties, yes. You know, we talked about job description. Did you rely on the job description for the dispatcher as opposed to the aide? No. The job description is part of the record. But the job description for the aide does not in any way use the term investigative or investigation or investigator. No. That part of the evidence, that's Exhibit A in there. The other exhibit is the petitioner herself. What did you do during this period of time? And she lays out what she did. There's about six different verbs of what she says she did in that description. And that's part of the record here. Did I answer the phone? I think the appellate court in the other case relied very heavily on the fact that the petitioner had supporting testimony from three other officers. That's true. There wasn't anything like that here. There was not cumulative evidence. No. It did have the same characteristic and type. It was unimpeached, unopposed, uncontradicted, and it must be its competent testimony. But those were uncontradicted factual representations. They don't really have anything to do with the determination as to whether or not those factual representations, uncontradicted. We're back to Bucktown Partners now. But they can't serve as a way to get around the requirement that the board itself has to decide what the statute means. The board has to decide. These uncontested factual representations amount to investigative work under the statute. In other words, a prima facie case. The board got it wrong the first time, along with the circuit court in Dietrich. That's why the appellate court said you're wrong. Go back there. You did it wrong. Yeah, but there are distinct differences, some distinct differences, let's put it that way, between the employee in Dietrich and your client. But they followed a cross-examination. Your client wasn't an interpreter, for one thing. Yes, she did. It's in there. Yeah, it's in there. She did interpret. But going back to the officers not having what you described as cumulative evidence, it may be cumulative or it may be corroborative. And you need, and the board says, in order for you to make a claim that dates back 10, 12 years ago, you need some corroboration that you, in fact, did engage in this investigative work. And in Dietrich, we had four officers that described what Dietrich did as a, whatever her position was at the time, that amounted to investigative work. Here, you don't have a single officer coming in. Nope. But Collins herself cannot qualify as both a claimant and an officer because we're not talking about what she does as an officer. We're talking about what she did before she became an officer. And to that extent, she's not testifying as an officer. She's testifying as an individual, as an aide, who's seeking now to tack on that work to her pension as an officer. She's speaking at this hearing as a retiree, okay? She's been a dispatcher's aide. She's been a police officer. When she gave her opinion, is that the person who's qualified as a sworn police officer? I know what a dispatcher's aide is. I know what investigative work is. I'm a sworn police officer. I know. I no longer have the brain, the knowledge of mere dispatchers. I have all this 20 years experience. Stop for a second there. Once she became an officer, as I recall, she continued doing similar work. That's correct. Did she testify that the work I did as an officer was virtually the same work that I did as an aide? Yes. She said that? That's in the record. I don't recall reading anything like that, but I'll certainly look. Do you have a record cite? Yeah. I alluded to it earlier when I said the only difference between this job as a police communications operator and a former position as a police dispatcher's aide, common law record, line 221, page 19, lines 19 through 24, and page 222, lines 1 through 4. Instead of writing down the information on a card in her hand, she typed the information on the computer. In both positions, the information was next sent to the dispatcher. She said she could not recall from other investigative functions other than those described. Let's say the difference between writing something on a 4-by-5 card and entering it into the computer. The computer might require some sort of code that only officers actually enter. And to that extent, it requires more training, more knowledge, and the aide isn't given that sort of responsibility. She simply passes it to the dispatch, who in fact enters it into the computer. And to that extent, the dispatcher is different. Perhaps the respondent should have introduced some testimony to that effect. Well, then we go back to whose burden it is. She met a burden. Well. She said, do you want to know, did you do investigative work? That's what the trustee asked her. And she says, yes. And she is particular in what she says. Did that yes answer come unexpectedly? No. Absolutely not. Right. We all knew she was going to say yes. She didn't know and say it's true. We all knew she was going to say yes. The question is, what did she say to back it up? Exactly. The substance of that backup stuff is in the transcript. And that is the response to the question by the trustee. As he said with particularity, I did these various things. Let me see. Well, Mr. Boland, what we're going to do is we're going to give you time to respond to the board. And you'll have an opportunity to get that particular location. Before you let him sit down, just let me ask you, what do you think of this Lachey's argument that the board has made? Well, Lachey's done the problem. Well, you could say that, but why doesn't? I mean, she waited 12 years, and obviously she didn't file until she had an appellate court case on her side, she thought. Right. But she could have any time. No. You could have filed only after he had to wait three years after getting on the job. Right. By statute. So it cuts it to nine. Cuts it to nine. That's right. That's a long time. It's presumptively unreasonable if it lasts more than six months. That's what the old case law says. Here's the thing. Party. Lachey's applies a party statute. What about the argument that they could have been, if she had prevailed early on when she had filed in a timely fashion. There's two elements. That there would have been contributions that would have been made on her behalf. No. Now you're trying to saddle the city with back payments. No, you're not saddling the city with anything you didn't have to do in the first place. Section 106D of the statute says, you shall contribute when the demand is made. The demand is made. There's no statutory requirement to make your demand at a certain time. Two. The city's not a party to this litigation. It's Collins. It's the board. Okay? And the prejudice, there's no showing of any prejudice. Prejudice must occur to a party by the action or inaction of the other party. The city's not a party. No, it's not. Indirectly, they're financially responsible for this. Right. They have to raise the money and pay it. That's their job. They're suffering no prejudice. They have to do it. They have to do it by statute. All right. And the thing is, everybody is so touchy about the prejudice. They say, oh, we don't want to raise the tax. Now, that's the kicker in here. Everybody wants to say, I don't want to raise the tax. That's the board's real motive. I don't want to raise the tax because the mayor's going to yell at me if I go over there and say you have to raise the tax. Or you have to pay the city workers. You've got to pay the pensioners in cash. You pay city workers in the script. That's what they did during the Depression. They got script for the people on the street. You're giving away your age, Mr. Bowman. I've read books. Okay. I've heard books. We'll give you a couple minutes to respond. Thank you. Thank you. And now you can also introduce yourself. Thank you. Mr. Clark, please. David Kugler, representing the Retirement Board. You've been here often before, Mr. Kugler. How are you this morning? A little sore throat, but I'm okay. Okay. All right. Well, Mr. Kugler, you're aware that we know this case. I know you've read the record, and I'd like to be brief and just hit a couple points. Before you even begin, let me ask you this. There is this exception under that section, and the legislature must have meant something by inserting that provision in. And without referring to those Rule 23s that we've heard enough about in the briefs, what circumstances do you believe would qualify as investigative work to allow someone who's not a police officer to tack on that time that the person engaged in that work? Well, to a certain extent, I agree with Mr. Boland on one factor. This Court recognized this fact and dealt with it in the Dietrich case. Unfortunately, for myself, I did not. Well, that was in opposition to you. Unfortunately, I probably did not present an overwhelming argument in the Dietrich case. But if you look at the Dietrich case, I think it really stands in opposition to this case, and it shows you what has to be here. Well, let me ask you. Let me ask you in that regard. Does Dietrich establish the bottom line, or does Dietrich establish what is an overwhelming showing that this individual did, in fact, engage in investigative work, and therefore, anyone who comes in with perhaps a less of a showing would qualify as well? Well, you know, it's a difficult question to answer because all of these cases... Well, what's your position on that? I think all of these cases are fact-intensive, and they're fact-intensive, and the Board has to listen to them. But let me just... I want to get to your point. Well, what was missing in this case? What was missing in this case? A, this officer, this Collins, never went on the street to assist a police officer. Did Dietrich go on the street, or did she stay at the district? No, she went on the street also, the officers testified. B, in Dietrich, four police officers testified that as a result of the work that they did with her, it was their opinion that she was doing investigative work. No such officer testified to that fact in this case. In Dietrich, the officers testified that not only did she initiate questions that they didn't think of, that she also wrote reports on the questions. That she also judged credibility of the witnesses and of the people that were being interviewed. That she relayed those credibility assessments to the officers. That she wrote full reports. That she made follow-up phone calls. No such testimony exists in this case. So is it your position that all of that would have to be presented in a case in order to establish that an individual... Something similar to that, I would say. Well, let's go down the line. Writing reports? Writing reports is an element.  Right. Going on the street is an element. Assessing credibility is an element. All of these things are factored in. You have to understand something, if I may. But pre-Dietrich, were there any elements that the board was looking to? Pre-Dietrich? Pre-Dietrich. Yeah, there was other... Do you have a case where an individual qualified under this exception or this provision to tack on pension benefits for the work done in investigative work? Well, I'd have to then... You've taken me into Rule 23 cases, which, you know... And maybe they shouldn't have been Rule 23s. Maybe they should have been published if they established for the first time that an individual qualified under this provision. But my point is... Most of them did not. My point is that you... The board is now taking the position that Dietrich is guiding them in their decisions. The Dietrich decision is guiding them in future decisions. And the question is... It's a factor. I don't say it's the only factor. Fine, fine. But the question is, maybe we should be guiding the board still further. Maybe we should refine those elements a little bit more and in favor of claims. Because the pension laws should be liberally construed. Well, liberally construed for what? They're liberally construed to help an officer, but they're also... To help the retirees, to help the officer. And secondly, to preserve the funds and not award benefits when benefits are not proved to be somebody's entitled to them. Just because an officer appears and the law says liberally construed doesn't mean bend over backwards, break your back, and affect other officers who are going to retire later on. Mr. Olin suggested that maybe the motivation behind this provision, enacting this provision, was investigators working for corporation counsel or perhaps other investigative bodies that weren't officers but likely would go on to become officers and therefore would be entitled to tack on this work. Do you have any kind of legislative history that would enlighten us? Regarding why this provision is in the law to begin with? I think this provision, I don't have anything that I can present to the court factually, but I believe this provision came about with the OPS officers that were working and that was what it was intended to cover. And it now is seeking to be expanded out into all the way out wherever. If I adopted Mr. Boland's argument and followed the logic... The door would be wide open. If I followed the logic of this case, I suppose the only civil service employee assigned to the police department who wouldn't get a benefit would be somebody who was assigned to fix computers or do janitorial service. Because everybody in some fashion picks up a report, moves it from one desk to another desk, writes a report, writes something down. If somebody calls in, what's your name? They write it down. Does that make them an investigator? If you look at what her testimony was, what did she do? Well, let me ask you regarding that. Is it your position that whatever she did, if she engaged... Was not enough. If she engaged in any kind of investigative work, and assuming that for purposes of argument, if she engaged in any kind of investigative work based on her testimony, that went beyond the job description that she had for the position she held, and therefore she's not entitled to claim credit for that work because the job description itself doesn't involve investigative work, and to the extent that the police department is the employer of this civilian employee, they should determine what sort of work this person should get credit for. Well, the job description, number one, as you pointed out before, doesn't contain anything to do with investigative work. If I suppose, I suppose, and understand, I'm the attorney. I'm not deciding these cases as a board member. But I would suppose that if someone would come in and testify and have support of other officers in testifying, that they did certain work which was beneficial to the officers in the pursuit of the case, that the board would consider things like that. So you're saying in light of Petrick you would... Yes. You'd take another look at any case involving an employee who showed up with four officers and... Correctly so. In support of the position. I want to make this one point, and I think, I keep trying to make it, and Your Honor keeps... That's our job. Leaving me away. But let me come back. You're not accusing Justice Garcia of trying to get you off the top of it. I just have questions. This isn't moot court. Just tell him to cut it out. I guess I'm kind of used to this, as you pointed out. This board is comprised of, I think very key to this case, is the legislature did not give us a definition of investigative work. Okay. Maybe it would be a lot simpler had they. But they did not. Why did they not? Well, they left it up to you. That's your job. That's a matter of fact. You're the gatekeeper for the statute. And that is very true. They left it up to us. And what is us? The board is, in this case, seven members inside of this case, four of whom are policemen, one representing retirees, one representing lieutenants, one representing patrolmen, one representing sergeants. Who better to determine than four policemen sitting there hearing the case, what is and what is not investigative work? So your argument is that there's a substantial deference owed to the board. And I would say this is a case which the court has often said it's based on a clearly erroneous statute. It's a mixed question of law and fact, as the Dietrich case pointed out. And as such, the board should be affirmed unless this court is prepared to say that they have a definite and firm conviction that the board has erred in analyzing this particular case. I believe that the board decision should be affirmed. Well, thank you very much. Thank you, Mr. Krugman. Thank you. A short rebuttal, Mr. Goldman? Yes, sir. And the legislature chose the word investigative work. Now, they didn't say 40% investigative work, no quantum. To the earlier inquiry about what Ms. Collins said concerning the response of what's in her investigative work, it's on page 224, lines 8 to 22, which described particularly the manner she did in investigating. The matter of returning was known. In my brief, I talk about the quantum of proof of investigative work. There is none. That's on page 17 of the brief. Each case turns on its own set of facts, right? It's like a motion to suppress evidence. It's a proper clause. And you have to consider all the facts and analyze them in that fashion, as opposed to saying there's category A, B, C, D. Legislature goes category A, B, C, D. The jurists go analyze the facts, right? And when you get competent testimony, I mean, I've been a trial lawyer, okay? When competent testimony is unimpeachable and corroborated and contested, it's to be accepted unless it's incompetent. I don't think they rejected her testimony. They just evaluated it in terms of their duty to decide what investigative means under the statute. And they didn't think that this particular case had enough facts to rise to the level. I agree. But there's no factual basis for it. You're supposed to decide the case on the evidence in the record and not what your supposition, not what your preconceived notion of determining what is there. Who's this saying? The butcher, the baker, the candlestick maker. You got the guy from the Northern Trust. You got the city treasurer. You got another bird, you know, and you have some police officers. All right? It doesn't say, but we want to hear the board's notion of what investigative work is. The legislature never asked for that, and that's not in the record. I meant to ask Mr. Krugler this, but it slipped my mind. Maybe this is the sort of case. Let me ask you. Is this the sort of case that might have been in the legislature's mind when they enacted this because an individual such as Ms. Collins was mandatorily retired as opposed to allowing her to continue serving as an officer so that she could have gained her full pension benefits? She had to quit early after only a 12-year service, and had she been able to tack on that prior service, she would have gotten the full benefit that she would have wanted to gain had she been allowed to remain an officer. We know there is a background to that in the court. They don't articulate it. But the city was chiseled in these cases because in the Dieter case and in this case, they didn't want to pay for civilian transit across the city. They wanted to get other people to do the job of the transit. That's what the Dieter didn't do, and I think that's part of it here. All right. Well, thank you very much, Mr. Boland. You get a twofer. If you get a dispatcher, you get a twofer. Oh, good. All right. Well, thank you very much, Mr. Boland. The case will be taken under advisement, and as I indicated, Judge McBride will fully take part in the deliberations.